IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ELIZABETH ANN EL KASSEMY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:08CV00018 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TELVISTA INC., | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |
| | ) | |

Before me is the Defendant's Motion for Summary Judgment [10]. In this case, Plaintiff alleges: Harassment for race discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et. seq.*; Harassment for age discrimination, in violation of Section 3 of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et. seq.*; and retaliatory discharge in violation of Section 503 of the Americas with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12201 *et. seq.*

The Defendant raised several arguments in support of summary judgment, which were uncontroverted. Thus, for the reasons herein, I will **GRANT** the Defendant's Motion for Summary Judgment under federal law and the precedence of this Circuit.

## I. PROCEDURAL BACKGROUND

Plaintiff, Elizabeth Ann EI Kassemy ("El Kassemy"), filed a *pro se* lawsuit on or about June 2, 2008. The Complaint [3] refers to a right-to-sue notice EI Kassemy received from the Equal Employment Opportunity Commission ("EEOC") charge number 438-2006-00779 ("00779 charge"). (See Compl., Docket # 3, Answer to question C and Doc. 3-2 attached to Compl.) A review of the 000779 charge shows that EI Kassemy is complaining of the following:

1

1. Harassment for race discrimination, as an African-American, in violation of Title VII, 42 U.S.C. §§ 2000(e) *et. seq.,* because she was allegedly closely scrutinized in her performance, because she allegedly engaged in discussion in the workplace about her complaint to the EEOC, and because she allegedly complained about rumors regarding her husband and an extra-marital affair;

2. Harassment for age discrimination, in violation of ADEA, 29 U.S.C. §§ 621 *et. seq.,* for the same reasons as set forth under (1.) above; and

3. Retaliatory discharge on August 20, 2006 because she allegedly complained six months earlier, in February, 2006, that Telvista had disclosed her confidential medical information to her husband in violation of ADA, 42 U.S.C. §§ 12201 *et. seq,* and because of her EEOC complaint in violation of Title VII.[1]

## II. UNDISPUTED FACTS

### A. General

Telvista is a company which specializes in providing outsourced customer care solutions to a broad range of clients, and has numerous call centers to service those clients, including one in Danville, Virginia. (Affidavit of Ronald J. Lisenby, ¶ 2 ("Lisenby Aff."). According to Telvista's handbook ("Team Member Guide"), it is an Equal Employment Opportunity Employer which does not tolerate any discrimination/harassment in the workplace. (Id. at ¶ 4, and Ex. 1 attached.) The Plaintiff signed an acknowledgement receipt for the handbook after reviewing the

---

[1] The *pro se* Plaintiff did not specifically allege the retaliatory discharge was due to her EEOC complaint, but she alludes to such an allegation, and therefore I have included it in my opinion.

policies and procedures contained therein. (Id. at ¶ 5 and Ex. 2 attached.) In 2006, the year EI Kassemy was terminated from Telvista, Telvista reported that it employed 526 employees at its Danville Call Center – 368, or approximately 70%, were African American. (Id. at ¶ 6 and Ex. 3 attached.)

Telvista propounded Interrogatories and Requests for Production of Documents to EI Kassemy on October 13, 2008. (App. As Ex. B.) El Kassemy has not responded to the discovery in violation of my Pretrial Order [8]. Further, the Plaintiff has not provided any of her own evidence to support her claims, nor has she contested any of the facts proffered by the Defendant, therefore the Defendant's affidavits and evidence will be considered uncontroverted.

### B. El Kassemy's Employment.

EI Kassemy was hired by Telvista's Danville Call Center to be a customer service representative in April, 2005 at the age of 40. (See Ex. A to the App.)

In sum, EI Kassemy complained to management concerning a variety of issues throughout most of her employment, which were all investigated by Telvista and each was found to be without merit. (Lisenby Aff. at ¶ 7.) Not satisfied with the resolution, the Plaintiff continued to make the same complaints, internally causing frustration and loss of productivity at Telvista. (Id.)

The first complaint occurred in November of 2005 and was directed against a coworker, Alicia Leigh ("Leigh"), an Administrative Assistant in the Human Resources Department at the Danville Call Center who is also African American. (Id. at ¶ 8; see also Ex. A to the App.) According to the Plaintiff, Leigh had allegedly told other employees that she had an affair with the Plaintiff's husband. (Id. at ¶ 9.) El Kassemy considered this as harassment, complained, and

3

Telvista's Human Resources Manager in Danville, Ronald Lisenby ("Lisenby"), conducted an investigation. (Id.) During the investigation, El Kassemy refused to provide Lisenby any specifics regarding the claim. (Id. at ¶ 10.) Notwithstanding, Lisenby interviewed Leigh and conducted a thorough investigation. (Id.) Lisenby's investigation proved the Plaintiff's claims were groundless. On November 30, 2005, Lisenby informed El Kassemy that no evidence supported her allegations, that this finding should not dissuade her from making complaints in the future, and that Leigh, as a coworker, had no power to adversely affect El Kassemy's employment. (Id. at ¶¶ 13-14 and Ex. 5 attached.)

On or about January 31, 2006, El Kassemy made the same allegation against Leigh as she had done previouly, without providing any corroborative evidence to substantiate the claim. (Id. at ¶ 15.) Lisenby investigated, and like before, could not verify the substance of El Kassemy's allegations. (Id.) Not satisfied, El Kassemy appealed to the Telvista corporate Human Resources Group Manager, Jana Vigil ("Vigil"). (Id. at ¶ 16.) Vigil reviewed the investigation and affirmed Lisenby's conclusions. (Id.) On or about February 23, 2006, Vigil and Lisenby informed El Kassemy of the company's findings: her allegations of harassment/discrimination could not be substantiated, there was no more in-house review available, and thus, she was to drop the issue internally. (Id. at ¶ 17.)

El Kassemy proceeded to verbally, and through the company e-mail system, voice the same complaint over the next two months, causing distraction and productivity loss for Telvista. (Id. at ¶ 18.) On May 5, 2006, Telvista warned El Kassemy in writing to stop her disruptive

4

behavior because it violated Telvista's anti-harassment/discrimination policy (found in the Team Member Guide).[2]

During her employment, El Kassemy also continually made allegations that she was under heavy surveillance. (Id. at ¶ 19.) According to the Team Member Guide, employees know that their phone calls in assisting Telvista's client's customers could and would be monitored for, among other things, quality assurance purposes, and employees "have no right to privacy in connection with the transmission, receipt or storage of information using Telvista telephones." (Id. and Ex. 7 attached.)

Starting in April of 2006, El Kassemy sent several threatening or insubordinate e-mails to several different management employees about the alleged excessive monitoring she deemed was a form of harassment. (Id. at ¶¶ 20- 21 and Ex. 8(a) through 8(t) attached.) Telvista, investigated during the relevant time period and found El Kassemy was not subject to any heightened monitoring (Id. at ¶¶ 21-24 and Ex. 9, 10(a) – 10(e) attached.) Based on these results and the increased hostile and persistent nature of El Kassemy's e-mails, Telvista again formally warned El Kassemy regarding her conduct in July, 2006. (Id. at ¶ 24 and Ex. 11 attached.)

In addition, El Kassemy alleged through most of 2006 that Leigh was tampering with her time-off requests. (Id. at ¶¶ 25-26 and Exs. 12(a)-12(e) attached.) Lisenby and others investigated and found the claims to be without merit because Leigh had no authority over El Kassemy's time-off requests, El Kassemy did not go through the proper channels (despite being advised of the proper protocol on several occasions), and because of scheduling issues (*i.e.,* others had already requested time-off, etc.). (Id.)

---

[2] Telvista requires that discrimination/harassment complaints to be made in good faith, and El Kassemy's repeated unsubstantiated allegations against Leigh failed meet that standard. (Id. and Exs. 1 and 6 attached.)

5

### C. El Kassemy's Termination from Telvista.

In late July, 2006, El Kassemy sent two e-mails directly to Leigh accusing her of spreading rumors, tampering with El Kassemy's time-off requests, and harassing El Kassemy at home via telephone and email. (Id. at ¶ 27 and Exs.13(a)-13(b) attached.) Leigh filed a complaint against El Kassemy claiming that the e-mails were threatening. (Id. at ¶ 28.) As a result of Leigh's complaint, Lisenby investigated. (Id.) Leigh denied all of El Kassemy's allegations, and El Kassemy, once again, failed to cooperate in the investigation by refusing to provide any records or substantiation. (Id. at ¶¶ 29-30.)

Lisenby concluded that El Kassemy's allegations were made in bad faith because she did not choose to cooperate in the investigation, and he thought a reasonable person would have saved those messages or e-mails to verify the offensive conduct. (Id. at ¶ 31.) Having been written up twice before (in May and July), Lisenby, along with Vigil, terminated El Kassemy on August 18, 2006 for violation of Telvista's policies. (Id. at ¶ 32 and Ex. 14 attached.)[3]

Telvista's Human Resources Department at the Danville Call Center had no knowledge of El Kassemy complaining, including on or about February 5, 2006, that "confidential medical information" had allegedly been disclosed to El Kassemy's husband as she states in her charge of discrimination to the EEOC. (Id. at ¶ 33.)[4] Therefore, Telvista did not take any action against

---

[3] Specifically, the Plaintiff violated policies:
    2.4 – Anti-Harassment and Anti-Discrimination, which includes but is not limited to unwelcome offensive comments, jokes, gestures, or written communication that ridicule, threaten, or otherwise offend;
    4.2 – Professional Conduct which states threatening, intimidating, coercing, harassing, or interfering with other team members is unacceptable; and
    4.3 – Responsible System Use which states you must use the internet and email for authorized business use only.
(Id. at ¶ 32 and Ex. 14 attached.)

[4] In fact, employee medical and benefit information is not kept at the Danville Call Center; such information is stored at Telvista's facilities in Dallas, Texas. (Id.)

El Kassemy for allegedly discussing that complaint or in communicating with the EEOC as stated in her Complaint. (Id. at ¶ 34.) [5]

Finally, at no time during El Kassemy's employment, did El Kassemy state to Lisenby or the Danville Call Center's Human Resources Department that she felt that she was being "harassed" as to the above or any other issues specifically because she was African-American or because of her age. (Id. at ¶ 35.) To the best of Telvista's knowledge, El Kassemy also never claimed that there were any derogatory comments or slurs made to her regarding her race or age. (Id.) El Kassemy's age, race, or her a complaint about the release of confidential medical information played no role in the decision to terminate EI Kassemy. (Id. at ¶ 36.)

## III. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In making this determination, the court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Nevertheless, where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate; that is, the moving party is entitled to judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Opposition to a summary judgment motion may not rest upon "some

---

[5] El Kassemy was terminated on August 18, 2006 and her EEOC charge was not filed until November 20, 2006.

7

metaphysical doubt as to the material facts" or upon "mere allegations or denials." Id., at 586. Additionally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

## IV.   DISCUSSION

### A.   Summary

I will grant the Defendant's Motion for Summary Judgment because the Plaintiff has failed to proffer any admissible evidence to establish a *prima facie* case.[6] According to the pleadings, even viewed in an exceedingly favorable light to the *pro se* Plaintiff, this case does not establish the necessary *prima facie* elements for racial or age discrimination/harassment, or for retaliatory discharge – much less issues of material fact for a jury to decide.[7]

Judicial economy and federal precedence prevents be from allowing a jury to hear litigation based solely on the mental musings and unsubstantiated allegations contained in a disgruntled plaintiff's complaint.  The Supreme Court has stated that the non-moving party in a Summery Judgment Motion may not rest upon "some metaphysical doubt as to the material

---

[6] While it is true that the court will attempt to assist a *pro se* Plaintiff navigate the choppy waters of the federal court system, I cannot advise or compel a party before me to act in their own best interest.  El Kassemy was well aware of all filing deadlines and consequences of her actions.  She received a Roseboro letter [13] detailing the time period (14 days) to "to submit counter-affidavits or other relevant evidence contradicting, explaining, or avoiding defendant's evidence. Failure of plaintiff to so respond may, if appropriate, result in summary judgment being granted for defendant."  In addition, due to the Plaintiff's uncooperative behavior to schedule a hearing, the clerk's office sent a second letter [14] warning that if her behavior continued, the "case could be dismissed for lack of prosecution."

[7] Despite submitting a verified complaint, even if construed liberally, it does not rise to the level of even contesting the affidavits and evidence provided by the Defendant.  Therefore, the Defendant's affidavits and evidence is considered uncontroverted.

8

facts" or upon "mere allegations or denials." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In this Circuit, speculative assertions concerning the defendant's "state of mind" or "motivation" also will not suffice. <u>Goldberg v. B. Green and Co., Inc.</u>, 836 F. 2d 845, 848 (4th Cir. 1988). Instead, the court should "scrutinize the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).[8]

The Plaintiff's pleadings, or lack thereof, do not contain one scintilla of evidence to substantiate any of the claims contained in the Complaint. Specifically, El Kassemy cannot establish a *prima facie* case for a hostile work environment or retaliatory discharge because:

1. No evidence was proffered that the alleged conduct was based on EI Kassemy's race or age,

2. No evidence was proffered that the alleged conduct was so severe or pervasive enough, as a matter of law, to create a hostile work environment,

3. No evidence was proffered imposing liability on Telvista;

4. No evidence was proffered that her private medical information in the possession of Telvista was leaked to her husband, and

5. No evidence was proffered her termination was in any way linked to filing an EEOC complaint.

This case paints the picture of a disgruntled employee, who wants the federal court system to act as a super Human Resources Department in order to address and remedy her

---

[8] "Fourth Circuit precedent has developed an increasing affinity for the two-part, "pretext plus" standard at summary judgment. The court has recently invoked the two-part test in establishing the burdens at the summary judgment stage of a discrimination case: 'If the defendant succeeds in rebutting the presumption [of discrimination], the burden of production returns to the plaintiff to show that the defendant's nondiscriminatory explanation is pretextual and that the employment decision was based on… discrimination.' <u>Reinhold v. Virginia</u>, 135 F.3d 920, 932 (4th Cir. 1998) (emphasis added) (citation omitted). In this case, the Plaintiff has not only failed to meet the burden of production after the Defendant's rebuttal, but the Plaintiff has not contested any argument contained in the Defendant's Motion for Summary Judgment.

9

outlandish and unsubstantiated allegations. As the Supreme Court has repeatedly noted, not every workplace slight or disagreement rises to the level of actionable harassment. Rather, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Further, when looking at the documents produced by the Defendant, one can reasonably conclude that the threatening nature of the Plaintiff's correspondence was to induce capitulation to her allegations.

For these reasons, and those explained in greater detail below, I will grant the Defendant's Motion for Summary Judgment.

### B. Racial or Age Based Discrimination/Harassment.

The Plaintiff fails to establish three of the four elements to establish a *prima facie* discrimination or harassment case and therefore the Defendant's Motion for Summary Judgment should be granted. To establish a *prima facie* case of a Title VII harassment/hostile work environment claim based on race or age, a plaintiff must prove the following four elements:

(1) There was unwelcome harassment;

(2) The harassment was based on either race or age;

(3) The harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere; and

(4) There is some basis for imposing liability on the employer.

See e.g., Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied,* 540 U.S. 940 (2003); Shuler v. Corning, Inc., 2008 WL 3929139 (W.D. Va. 2008) (J. Kiser).

Since the first element is subjective, it is easily satisfied. However, the Plaintiff offers no evidence to support the establishment of the remaining three elements.

      a) *El Kassemy cannot establish the harassment was based on either race or age.*

The Plaintiff fails to satisfy the second element because neither the Complaint nor her EEOC filings contain any evidence to establish the complained harassing was because of El Kassemy's race or age. While El Kassemy may have felt mistreated, she never specifically made the claim that the mistreatment was because of her race or age in any of the complaints she made to Telvista. Consequently, while El Kassemy may be African-American and over the age of 40, there is nothing to suggest that she was the subject of alleged mistreatment *because she* is African-American or over 40. This precludes any hostile environment claim that El Kassemy may have. See *e.g.* Hawkins v. PepsiCo, Inc.*,* 203 F.3d 274 (4th Cir. 2000).

The Defendant relies upon the Hawkins, and it is on point. In Hawkins, an African-American employee complained her White supervisor was overbearing, quick to criticize, rarely bestowed praised, and prevented her from advancement opportunities. 203 F.3d at 281. Hawkins was barred from proceeding with her claim because she could not show the alleged animus was based on race.[9] Id.

Regarding alleged age discrimination, El Kassemy's allegations similarly fail. In Bass v. E.I. Dupont de Nemours & Co.*,* the plaintiff, who was over 40, had her duties reassigned because

---

[9] At the time of El Kassemy's employment, approximately 70% of the Telvista workforce was comprised of African-Americans. (Lisenby Aff. at ¶ 6 and Ex. 3 attached.) According to Jiminez v. Mary Washington College*,* the Fourth Circuit noted that a Title VII case where employers knowingly hire workers from a protected class are generally unlikely to discriminate against those from that protected class. 57 F.3d 369, 378 (4th Cir. 1995), *cert. denied,* 516 U.S. 944 (1995).

11

of performance issues, but claimed the reassignment equated to harassment based on her age. 324 F.3d 761,765 (4th Cir. 2003), *cert. denied,* 540 U.S. 940 (2003).  Like in the present case, the plaintiff in Bass never indicated the alleged harassment was based on her age. 324 F.3d at 763.[10]  In granting summary judgment, the Court noted that the facts failed to establish a *prima facie* case and merely tell the story of a workplace dispute that does not rise to the severe or pervasive gender, race, or age based activity necessary to proceed to trial.  Id. at 765.  The same holding would be appropriate for the case at bar.

Stated simply, there is no evidence in this case that the alleged "harassment" El Kassemy was subjected to was because she was African-American and/or because she was over 40. She never made such an allegation while she was employed, and as Hawkins and Bass instruct, she is legally precluded from making such an assertion after the fact.

b) *El Kassemy cannot establish the harassment was so severe or so pervasive that it altered the conditions of employment and created an abusive atmosphere.*

The Plaintiff fails to establish Telvista's conduct was in accordance with what the courts consider actionable harassment because none of the allegations can be substantiated objectively to conclude that the environment was hostile or abusive according to legal precedence.

In the seminal case, Harris v. Forklift Sys., Inc., the Supreme Court stated. "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work

---

[10] EI Kassemy was 40 at the time of her hire and Lisenby was 59 years old during much of EI Kassemy's employment. Like in Jiminez, it is illogical to believe that Telvista would have hired EI Kassemy when she was over 40 and protected by the ADEA only for the purpose of harassing her (or allowing her to be harassed) because of her age. In Birkbeck v. Marvel Lighting Corp*.,* the Fourth Circuit stated, "employers who knowingly hire workers within a protected group [the elderly] seldom will be credible targets for charges of pretextual firing" 30 F.3d 507, 513 (4th Cir. 1994), *cert. denied,* 513 U.S. 1058 (1994).

12

environment… [one where a] reasonable person would find [it] hostile or abusive" by discovering it "permeat[es] with discriminatory intimidation, ridicule, and insult" – then it is beyond the court's purview.[11] 510 U.S. 17, 21 (1993). In addition, purely subjective "conclusory statements without specific evidentiary support, cannot support an actionable claim for harassment." Causey v. Balog, 162 F.3d 795, 802 (4th Cir. 1998) To determine if an environment is "hostile" or "abusive," the courts look at all the circumstances, and these may include:

      a. the frequency and severity of the harassment;

      b. whether it was physically threatening or humiliating;

      c. whether it reasonably interfered with work performance; or

      d. whether it resulted in physical harm.

Id., 510 U.S. at 23 (1993).

    In this case, not only are the allegations conclusory, El Kassemy refused to cooperate with or provide any substantiating evidence to assist Telvista's investigations of her allegations involving Leigh. Further, Telvista could not find any witnesses to corroborate her claims.[12] For other assertions, like her claim that she was under heavy surveillance, there was documented evidence that she was monitored the same as all employees, including many who were monitored more than El Kassemy. For still other allegations, like the denial of El Kassemy's time-off

---

[11] Thus, as this Court has held, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" actionable harassment. Shuler v. Corning, 2008 WL 3929139 (W.D. Va. 2008) (J. Kiser).

[12] The same is true as to El Kassemy's claim that Telvista somehow allowed her confidential medical information to be disclosed to her husband. Telvista has no record of such a complaint being filed while El Kassemy was employed, and even if she had filed such a complaint, it would have been almost impossible for this to occur since medical and benefit information is kept off the Danville Call Center's premises.

13

requests, there was no evidence of tampering conduct, but simply that EI Kassemy did not follow procedure, or there was no time-off to take, etc. – all legitimate non-discriminatory reasons. In addition, these incidents were not so severe or pervasive enough to create a hostile work environment. In fact, courts have routinely rejected allegations of harassment far more egregious than that alleged by EI Kassemy.[13]

Also, the Plaintiff fails to establish anything near the Causey suggested criteria for a "hostile" environment. The conduct was not frequent. There is no allegation El Kassemy was physically threatened or humiliated, only that she disliked the conduct. Finally, neither the EEOC claim or the present Complaint suggest her work performance was interfered with as a result of the conduct. She continued to be employed without loss of pay or benefits until her later discharge for independent and legitimate reasons.

The Plaintiff's subjective belief, and her frequent and loose use of the word "harassment," is not enough for her to survive summary judgment.

c) *El Kassemy cannot establish some basis for imposing liability on the employer*.

The Plaintiff fails to rebut the Defendant's affirmative defense to show the Defendant is liable for the alleged harassment. In order for Telvista to be held liable for the alleged harassing conduct of its employees, there has to be some basis for imputing liability to it. See e.g., Bass v. E.I. DuPont de Nemours & Co.*,* 324 F.3d 761, 765 (4th Cir. 2003). The standard for imputing liability is as follows:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or

---

[13] Defense's Memorandum in Support of its Motion for Summary Judgment provides case law where allegations included derogatory racial or age based statements and sentiments, unlike the present case.

14

successively higher) authority over the employee. Consequently, [Telvista] can escape liability by showing: "(a) that [it] exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Telvista] or to avoid harm otherwise."[14]

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (citing Fed. Rule Civ. Proc. 8(c)).[15]

In this case, Telvista had a policy which prohibits harassment and discrimination. The Plaintiff knew the policy, utilized it, and Telvista investigated each of El Kassemy's claims. Further, the pleadings show that the Plaintiff failed to cooperate with each investigation, and she failed to complain about the alleged disclosure of confidential medical information to her husband. Telvista concretely establishes the Burlington affirmative defense and the Plaintiff has failed to rebut it. Summary judgment for Telvista is therefore proper.

### C. Discharged in Retaliation for Complaints

The Defendant is entitled to summary judgment because it did not know of any existing protected activity in order to take adverse employment action against the Plaintiff, and because El Kassemy was terminated for an independent reason in accordance to company policy.

"[T]he test for proving *prima facie* retaliatory discharge requires that (1) plaintiff engaged in protected activity, such as filing an EEO complaint; (2) the employer took adverse

---

[14] "While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." Burlington, at 765.

[15] According to El Kassemy, most of the alleged harassment was done by Leigh who was not El Kassemy's supervisor. However, because El Kassemy alleges that some forms of harassment were allegedly perpetrated by management – e.g., excessive surveillance—the standard for supervisor liability as discussed in Burlington, *supra,* applies.

15

employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) *(*quoting Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)). An employer's lack of knowledge as to a protected action bars any claim of retaliation. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). Assuming that a *prima facie* case is established, the burden then shifts to Telvista "to rebut the presumption of retaliation by articulating a legitimate non-retaliatory reason for its actions." Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied.,* 128 S.Ct. 955 (2008). If that is done, then 'the burden shifts back to [El Kassemy] to show that the reason is 'mere pretext for retaliation by proving both that the reason was false, and that discrimination was the real reason for the challenged conduct.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Telvista, according to the papers, had no knowledge of a complaint being raised by El Kassemy, at any time during her employment, that confidential medical information was released to her husband or that she filed an EEOC complaint. Under Dowe, the employer's lack of knowledge would allow summary judgment to be granted in the Defendant's favor.

In addition, the evidence is clear that Telvista terminated El Kassemy because another employee, Leigh, complained she received threatening emails from El Kassemy. When Telvista confronted El Kassemy about these e-mails, El Kassemy refused to (or could not) provide counter-evidence to support her claim that Leigh was the one sending threatening communications. Without this evidence, Telvista believed that El Kassemy was either being uncooperative or that she had made bad-faith allegations against Leigh – both violations of Telvista's policies, which Telvista believed warranted El Kassemy's discharge. Because this was an independent and legitimate reason for termination, no claim for retaliation can exist. See, e.g.,

16

Holland, 487 F.3d at 218 (no retaliatory discharge where employee was terminated because his employer believed that he threatened another employee).[16]

Stated simply, "[t]he crucial issue in a [discrimination case] is an unlawfully discriminatory motive for a defendant's conduct, not the wisdom or folly of its business judgment", and as such, courts should not sit as a "super-personnel department that reexamines an entity's business decisions." Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997).

## V. CONCLUSION

For the reasons stated above I will **GRANT** the Defendant's Motion for Summary Judgment. An appropriate *Order* will be entered.

The Clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record and *pro se* Plaintiff.

Entered this 3rd day of March, 2009.

s/Jackson L. Kiser
Senior United States District Judge

---

[16] Further, the fact that El Kassemy may have complained about the disclosure of confidential information in February, 2006 did not mean that she was immune to discipline or discharge for her violation of company policies. To hold otherwise would mean that "an employee could guarantee his job security simply by filing a frivolous complaint ...on his first day of work." Dowe, 145 F.3d at 657. Discrimination statutes such as Title VII and the ADEA were "not enacted to guarantee (such) tenure in the workplace." Id.

17